**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **OLUTAYO ARIYO,**<br><br>                    **Plaintiff**<br><br>          **v.**<br><br>**THOMAS JEFFERSON UNIVERSITY**<br>**MEDICAL COLLEGE**<br><br>                    **Defendants.** | **Civil Action No. 2:23-cv-02835-NIQA** |

## <u>ORDER</u>

     **NOW**, this _____ day of _____, 2025, upon consideration of Defendant

Thomas Jefferson University's Motion for Summary Judgment and Plaintiff's response, if any, it

is hereby **ORDERED** that Defendant's Motion is **GRANTED** and the First Amended Complaint

is dismissed in its entirety, with prejudice.


                    BY THE COURT:


                    _____
                    Hon. Nitza Quiñones-Alejandro
                    United States District Judge
                    Eastern District of Pennsylvania

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **OLUTAYO ARIYO,** | |
| **Plaintiff** | **Civil Action No. 2:23-cv-02835-NIQA** |
| **v.** | |
| **THOMAS JEFFERSON UNIVERSITY MEDICAL COLLEGE** | |
| **Defendants.** | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Thomas Jefferson University, incorrectly named in the First Amended Complaint as "Thomas Jefferson University Medical College," by and through its undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment in its favor, and dismissing all claims in Plaintiff's First Amended Complaint with prejudice.

The reasons for this Motion are detailed in the enclosed Memorandum of Law. Should there be any opposition to this Motion, the Defendant respectfully requests an oral argument.

Respectfully submitted,

*/s/ Melissa Atkins, Esq.*
Melissa Atkins, Esq.
Aimee Schnecker, Esq.
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
(215) 665-3000
Attorneys for Defendant,
Thomas Jefferson University

Dated: May 5, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

OLUTAYO ARIYO,

               **Plaintiff**

    **v.**

**THOMAS JEFFERSON UNIVERSITY
MEDICAL COLLEGE**

               **Defendants.**

**Civil Action No. 2:23-cv-02835-NIQA**

---

**DEFENDANT THOMAS JEFFERSON UNIVERSITY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ..................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................... 2

III.  PROCEDURAL HISTORY ...................................................................... 2

IV.  STANDARD OF REVIEW ...................................................................... 4

V.  LEGAL ARGUMENT ............................................................................. 5

    A.  **Plaintiff's Title VII and Section 1981 Race and National Origin Discrimination Claims Fail as a Matter of Law Because Plaintiff Cannot Prove a *Prima Facie* Case of Discrimination, or that TJU's Actions Were Pretextual. ............................................................... 5**

    B.  **Plaintiff Cannot Establish a Prima Facie Case of Discrimination Because He Was Not Qualified for Promotion to Clinical Professor .................................. 7**

    C.  **Plaintiff Cannot Establish a Prima Facie Case of Discrimination Because He Cannot Show He Suffered an Adverse Employment Action. ........................... 8**

    D.  **Plaintiff Cannot Establish That He Suffered An Adverse Employment Action In 2022 Or That Any Employment Decision Made By TJU Occurred Under Circumstances Giving Rise To An Inference Of Discrimination. ................... 9**

        (i)  **Direct Evidence of Discrimination ....................................... 9**

        (ii)  **Inference of Discrimination ................................................ 10**

    E.  **Plaintiff cannot show that any adverse actions were taken because of his national origin in violation of Section 1981. .................................... 11**

    F.  **TJU Had a Legitimate, Non-Discriminatory Reason for its Action. .............. 12**

    G.  **Plaintiff Cannot Establish That TJU's Legitimate Reasons For Its Actions Are Pretext For Discrimination. .................................... 14**

    H.  **Plaintiff Cannot Establish That He Was Constructively Discharged. ........... 16**

VI.  CONCLUSION ..................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................ 4

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) ........................................... 5

*Billet v. CIGNA Corp.*,  940 F.2d 812 (3d Cir. 1991) ............................................................... 16

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556 (5th Cir. 2001) ..................................................... 18

*Carl v. Western-Southern Life Ins. Co.*, No. 09-3990, 2010 WL 3860432 (E.D. Pa. Sept. 30, 2010) ...................................................................................................................................... 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................... 4, 5

*Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571 (E.D. Pa. 2017) .............. 6, 9

*Colwell v. Rite Aid Corp.*, 602 F.3d 495 (3d Cir. 2010) ............................................................ 16

*Dill v. Runyon*, C.A. No. 96-3584, 1997 WL 164275 (E.D. Pa., Apr. 3, 1997) ............................ 9

*EEOC v. Hay Assocs.*, 545 F. Supp. 1064 (E.D. Pa. 1984) ........................................................ 18

*Ellis v. Bank of New York Mellon Corp.*, No. 18-1549, 2020 WL 2557902 (W.D. Pa. May 20, 2020), *aff'd* 837 F. App'x 940 (3d Cir. 2021) ...................................................................... 5

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) ...................................................................... 14

*Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375 (1982) ........................................ 6

*Gilbert v. Philadelphia Media Holdings LLC,* 564 F. Supp. 2d 429 (E.D. Pa. 2008) ............. 6, 15

*Gray v. York Newspapers, Inc.*, 957 F.2d 1070 (3d Cir. 1992) .................................................. 16

*Gross v. Hatboro-Horsham Sch. Dist.*, No. 23-0633, 2023 WL 4867423 (E.D. Pa. July 31, 2023) ............................................................................................................................................... 16

*Hampshire v. Bard*, 793 Fed. Appx. 75 (3d Cir. 2019) ............................................................... 9

*Homel v. Centennial Sch. Dist.*, 836 F. Supp. 2d 304 (E.D. Pa. 2011) ....................................... 8

*Jarmon v. Trader Joe's Company*, 660 F.Supp. 3d 357 (E.D. Pa. 2023) ...................................... 9

*Jones v. Sch. Dist. of Phila.*, 198 F. 3d 403 (3d Cir. 1999) ...................................................... 15

*Kamara v. Horizon House, Inc.,* No. 13-6728, 2015 WL 9260031 (E.D. Pa. Dec. 18, 2015) ............................................................................................................................................... 11, 12

*Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101 (3d Cir. 1997) ........................................... 15

*Leheny v. City of Pittsburgh*, 183 F.3d 220 (3d Cir. 1999) ........................................................ 16

*Lin v. Rohm and Haas Co.*, 293 F. Supp. 2d 505 (E.D. Pa. 2003) ......................................... 9, 11

*Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013) ............................................. 17

*McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) ........................................................... 6

*McGlone v. Phila. Gas Works*, No. 15-3262, 2017 WL 659926 (E.D. Pa. Jan. 19, 2017) ........... 17

*McLintock v. City of Philadelphia*, 504 F. Supp. 3d 411 (E.D. Pa. 2020) .................................. 15

*Moss v. Nat'l Railroad Passengers Corp.*, No. 18-1262, 2019 WL 4697603 (E.D. Pa. Sep. 26, 2019) ...................................................................................................................................... 15

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ................................................... 17

*Onley v Redner's Markets, Inc.*, 2023 WL 6626120 (E.D. Pa. Oct. 11, 2023) .............................. 6

*Orsatti v. N.J. State Police*, 71 F.3d 480 (3d Cir. 1995) ............................................................. 5

*Perkins v. Bringham & Woman's Hosp.*, 78 F.3d 747 (1st Cir. 1996) ......................................... 9

*Pollard v. Wawa Food Market,* 366 F. Supp. 2d 247 (E.D. Pa. 2005) ......................................... 7

*Red v. Potter*, 211 F. App'x 82 (3d Cir. 2006) ........................................................................... 9

*Ruff v. Temple Univ.*, 122 F. Supp. 3d 212 (E.D. Pa. 2015) ..................................................... 15

*Shelar v. Ameripride Servs. Inc.*, No. 03-4205-SAC, 2006 WL 1877010 (D. Kan. July 6, 2006) ............................................................................................................................................... 19

*Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311 (3d Cir. 2006) ......................................... 16, 18

*Spratley v. KidsPeace Corp.*, No. 5:22-cv-02411, 2023 WL 3007933 (E.D. Pa. Apr. 19, 2023)  17

*St. Francis Coll. v. Al-Kharzraji*, 481 U.S. 604 (1987) ...................................................... 11, 12

*Stremple v. Nicholson*, No. 01-890, 2006 WL 1744316 (W.D. Pa. June 22, 2006) ................... 17

*Taylor v. Lexington Cty. Sheriff's Dep't*, No. 3:18-cv-2579, 2019 WL 6696062 (D.S.C. Dec. 09, 2019) ........................................................................................................................................ 18

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ........................................... 9

*Tonello v. City of Grand Junction, Colo.*, No. 19-cv-694, 2020 WL 5760465 (D. Colo. Sept. 28, 2020) ........................................................................................................................................ 19

*Tran v. Delavau LLC*, 615 F. Supp. 2d 381 (E.D. Pa. 2009) ......................................................... 9

*Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001) ................................................................... 8

*Williams v. Greyhound Line Inc.*, C.A. No. 97-6997, 1998 WL 551981 (E.D. Pa. Aug. 11, 1998) ..................................................................................................................................................... 6

*Willis v. UPMC Children's Hosp. of Pgh.*, 808 F.3d 638 (3d Cir. 2015) ...................................... 5

**Statutes**

42 U.S.C. § 1981 ............................................................................................................................ 2

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 3

## I.    __INTRODUCTION__

Plaintiff was an educator within the Department of Pathology, Anatomy, and Cell Biology at Sidney Kimmel Medical College of Thomas Jefferson University ("TJU"). Despite Plaintiff's allegations, it is clear that upon retirement[1], Plaintiff held the position of Clinical __Assistant__ Professor, a fully salaried and non-tenured role on TJU's Clinician Educator Track. However, within days of his resignation date in June 2022, Plaintiff sought, and felt entitled to, a higher position. Specifically, he believed he deserved promotion to Clinical __Professor__, the highest rank in the Clinician Educator Track, despite not having spent enough time in his role to even be eligible for promotion to Clinical __Associate__ Professor, the rank above his position of Clinical Assistant Professor, before announcing his resignation nine months prior. Plaintiff was not considered for promotion for numerous reasons, none related to his race or national origin. In this instance, Plaintiff's perception of his abilities did not align with the objective reality of his eligibility.

As a Clinical Assistant Professor on TJU's Clinician Educator Track, Plaintiff's eligibility for promotion was heavily dependent on his teaching performance. He was appointed to the position—non-tenured and fully salaried—effective June 19, 2018. However, when he sought promotion in 2020, he failed to meet the objective criteria, including the minimum requirement of four years in rank. That requirement was not satisfied until June 19, 2022—eleven days before his planned resignation. In addition to his minimum level of seniority, Plaintiff received poor student feedback and had strained relationships with his peers. Although his performance deficiencies did not warrant termination, they rendered him unsuitable for further promotion. Ultimately, Plaintiff was promoted to his highest level of competence-

---

[1] Plaintiff's resignation is regarded by Defendant as a retirement, based on his email announcing his intent to retire. *See* Ex. 4 and Ex. 6.

Clinical Assistant Professor. He has offered no evidence that TJU's actions were motivated by unlawful discriminatory animus or served as a pretext for discrimination.

Plaintiff also fails to substantiate his claim of constructive discharge. He formally notified TJU of his intent to retire on September 15, 2021, with an effective date of June 30, 2022—more than nine months later. His assertion that he was forced to retire because of TJU's denial of promotion on June 21, 2022, is unconvincing, particularly given that he had already planned his resignation when he sought promotion and did not meet the minimum time-in-rank requirement until June 19, 2022. Moreover, Plaintiff continued working throughout the full nine-month period between his notice and resignation, contradicting his claim that conditions were so unbearable that resignation was the only option. Notably, just three months before his resignation, he expressed interest in a "Phased Retirement" program and proposed teaching a class in the 2024 academic year—further undermining his assertion of an intolerable work environment.

Based on the undisputed evidence, there is no genuine issue of material fact in dispute and, consequently, the Court should grant Defendant's summary judgment motion.

## II.     FACTUAL BACKGROUND[2]

## III.     PROCEDURAL HISTORY

Plaintiff filed his original Complaint in this matter on July 25, 2023. ECF 1. Subsequently, he filed the operative First Amended Complaint ("FAC") on October 12, 2023. ECF 5, s*ee Ex.* 37.

---

[2] Defendant incorporates by reference its Statement of Undisputed Material Facts submitted herewith, which includes background and detailed citations to the record.

The FAC includes two claims. Count One alleges racial and national origin discrimination under 42 U.S.C. § 1981, stating that Plaintiff was denied promotions and constructively discharged due to his race and national origin. Count Two makes similar allegations under Title VII of the Civil Rights Act of 1964, *as amended*. *Id.* In the FAC, Plaintiff asserts that he was denied promotions multiple times, specifically between 2005 and 2013, in 2013, and again in 2020 and 2022. Ex. 37 at ¶¶ 12-13, 15-16. Plaintiff also claims he was constructively discharged as of June 30, 2022. *Id. at ¶* 19.

Defendant filed a motion to dismiss the FAC based on statute of limitations under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF 12. On July 15, 2024, the Court partially granted the Motion. ECF 17. The Court's Order dismissed Plaintiff's Section 1981 claim regarding the failure to promote in 2013 and denied the Motion concerning the 2020 and 2022 promotion claims. For Count Two, the Court dismissed the claim based on any conduct prior to June 14, 2022. *Id.* This leaves Plaintiff with Section 1981 claims concerning his 2020 and 2022 allegations of failure to promote and his Title VII claims based on conduct after June 14, 2022. Subsequently, Defendant submitted its Answer on July 24, 2024. ECF 19.

Thereafter, the Parties attempted to conduct discovery. Without Defendant having received Plaintiff's discovery responses, Plaintiff's attorneys moved to withdraw as Plaintiff's counsel on August 27, 2024, which the Court granted on September 11, 2024. ECF 22, 24. Without any discovery responses, Defendant filed a motion to compel responses on September 11, 2024. ECF 23. On November 12, 2024, the Court granted the motion to compel and ordered Plaintiff to serve complete responses to Defendant's first set of interrogatories and Defendant's first set of requests for production of documents by November 12, 2024. ECF 26. Although Plaintiff provided a deficient document production by that deadline, he failed to respond to the

interrogatories, thus violating the Court's November 12, 2024, Order. In response to a motion by Defendant, the Court extended fact discovery to February 18, 2025. ECF 28. Meanwhile, Defendant filed a motion to dismiss for failure to prosecute on January 29, 2025. ECF 29. Despite multiple opportunities, Plaintiff failed to provide interrogatory responses by that date and failed to cure the deficiencies with respect to his responses to Defendant's requests for production of documents and the documents produced. It was not until March 17, 2025, after fact discovery had ended, that Plaintiff served patently deficient, and largely unintelligible, interrogatory responses on Defendant. The Court then denied Defendant's Motion to Dismiss on March 20, 2025. ECF 31. On April 9, 2025, Plaintiff requested permission to amend specific allegations in the FAC. ECF 32. TJU opposed this request; the Court denied Plaintiff's motion. ECF 34.

## IV.    <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute as to any material fact" exists and "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A defendant is entitled to summary judgment when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial. *Id.* at 322. Under this standard, the defendant satisfies its burden by showing there is an absence of evidence to support the plaintiff's case. *Id*. at 323.

To survive summary judgment, the plaintiff must set forth specific facts showing there is a genuine dispute of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 250 (1986). A genuine dispute of material fact is one that could affect the outcome of the

litigation under the governing law. *Willis v. UPMC Children's Hosp. of Pgh.*, 808 F.3d 638, 643 (3d Cir. 2015). The plaintiff "cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint but must point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police,* 71 F.3d 480, 484 (3d Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Likewise, summary judgment cannot be avoided by "resorting to speculation, or statements of personal opinion or mere belief; indeed, inference based on speculation or conjecture does not create a material factual dispute." *Ellis v. Bank of New York Mellon Corp.*, No. 18-1549, 2020 WL 2557902, at *9 (W.D. Pa. May 20, 2020), *aff'd* 837 F. App'x 940 (3d Cir. 2021). As the Third Circuit has put it, "summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## V.    LEGAL ARGUMENT

Thomas Jefferson University is entitled to summary judgment on Plaintiff's claims against it under both statutes, including Plaintiff's claims for wage loss damages. Plaintiff alleges that TJU discriminated against him by failing to promote him because of his race and national origin. Ex. 37, FAC at ¶ 24. He also claims that he was constructively discharged and forced to retire because of alleged discrimination. *Id.* at ¶ 25.  TJU maintains that it did not discriminate against Plaintiff and addresses each of Plaintiff's claims below.

### A.  Plaintiff's Title VII and Section 1981 Race and National Origin Discrimination Claims Fail as a Matter of Law Because Plaintiff Cannot Prove a *Prima Facie* Case of Discrimination, or that TJU's Actions Were Pretextual.

Discrimination claims brought under Title VII and Section 1981 follow the familiar burden-shifting framework first articulated by the Supreme Court in *McDonnell Douglas Corp v.*

*Green*, 411 U.S. 792 (1973), albeit with stricter standards of causation. *See, e.g.*, *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 588 (E.D. Pa. 2017) (Section 1981 imposes a more stringent "but for" causation standard). First, Plaintiff must make out a *prima facie* case of unlawful discrimination by showing that he is a member of a protected class and that he suffered some adverse employment action. *See Williams v. Greyhound Line Inc*., C.A. No. 97-6997, 1998 WL 551981, at *3-4 (E.D. Pa. Aug. 11, 1998). Plaintiff must also prove that he was qualified for the position and that similarly situated individuals outside his protected class were treated more favorably, or that TJU's decision not to promote him to Clinical Professor occurred under other circumstances giving rise to an inference of discrimination. *Id.* at *4 (summary judgment granted on race discrimination claim where there was "simply no proof that similarly situated non-minority employees were treated more favorably"); *Onley v Redner's Markets, Inc*., 2023 WL 6626120, *4-5 (E.D. Pa. Oct. 11, 2023).

If Plaintiff establishes a *prima facie* case, the burden shifts to TJU to provide a legitimate, non-discriminatory business reason for its action. *See Gilbert v. Philadelphia Media Holdings LLC,* 564 F. Supp. 2d 429, 434 (E.D. Pa. 2008) ("This is a 'relatively light' burden and...if met, the burden shifts back to the plaintiff who must demonstrate that the defendant's explanation is merely pretext."). If TJU can provide such a reason, the burden shifts back to Plaintiff to prove that TJU's proffered reason is actually pretext and that the "but for" cause of TJU's decision was Plaintiff's race and national origin. *Collins*, 247 F. Supp. at 604 ("...to prove causation at the pretext stage, the plaintiff must show that she would not have suffered the adverse action but for her [race or national origin]."). This requires Plaintiff to prove that TJU engaged in intentional discriminatory conduct. *Gen. Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 382-91 (1982); *see also Pollard v. Wawa Food Market,* 366 F. Supp. 2d 247 (E.D. Pa.

2005). As explained below, Plaintiff cannot establish a *prima facie* case of discrimination because: (1) he was promoted to Clinical Assistant Professor in 2018; (2) he lacked the objective qualifications to be promoted in 2019, 2020, 2021 and 2022 to Clinical Professor; (3) he rejected TJU's proposal to be considered for Clinical Associate Professor upon his resignation; (4) there are no circumstances suggesting unlawful discrimination; and (5) there is no evidence he was constructively discharged.

**B.  Plaintiff Cannot Establish a Prima Facie Case of Discrimination Because He Was Not Qualified for Promotion to Clinical Professor.**

Plaintiff cannot demonstrate that he was objectively qualified for promotion to Clinical Professor. Plaintiff never served as an Associate Professor, a requirement for a minimum of five years before consideration as Clinical Professor. SUMF ¶ ¶ 30-31. A Clinical Professor is the highest-ranking position at TJU on the Clinician Educator Track. *Id*.

To be considered for this promotion, candidates must spend at least four years as an Assistant Professor, followed by five years as an Associate Professor. *Id*. Without any basis, Plaintiff contends that, despite lacking the required experience, he should have been promoted to Clinical Professor. *Id.*

In this case, Plaintiff was ineligible for promotion to Clinical Professor or even consideration for it until he served at least five years as a Clinical Associate Professor. *Id.* The Declaration from Karen Novielli, M.D., confirms that a threshold requirement for promotion to any higher position is that the candidate must first meet the minimum service period in the preceding position. SUMF ¶¶ 16-17 and ¶¶ 26-31. Plaintiff cannot refute that he was elevated to Clinical Assistant Professor on June 19, 2018, which means he did not fulfill the necessary seniority qualifications for promotion to Clinical Professor before his resignation on June 30, 2022.  SUMF 38, which requires five years as an Associate Professor. Plaintiff was objectively

unqualified for promotion to the position of Clinical Professor due to the absence of the requisite experience as an Associate Professor. SUMF ¶ 38. Plaintiff's discrimination claims under Title VII and Section 1981 warrant dismissal.

### C.  Plaintiff Cannot Establish a Prima Facie Case of Discrimination Because He Cannot Show He Suffered an Adverse Employment Action.

Plaintiff cannot show that he suffered an adverse employment action. Plaintiff was promoted to Clinical Assistant Professor in 2018, the exact position he claims he was denied a promotion for in 2020. SUMF ¶ 9. Furthermore, as explained hereinafter, Plaintiff was not qualified for promotion to Clinical Professor at the time of his resignation in 2022 because he did not possess the experience needed for the promotion. *Id*. An "adverse employment action" is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Homel v. Centennial Sch. Dist.*, 836 F. Supp. 2d 304, 323 (E.D. Pa. 2011) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001)).

Here, Plaintiff argues that in 2020, Defendant rejected his request for a promotion to Clinical Assistant Professor while promoting other non-Black and non-Nigerian candidates with alleged lesser qualifications. Ex. 37 ¶ 15. This claim is inaccurate. The established evidence confirms that Plaintiff was promoted to Clinical Assistant Professor, effective June 19, 2018. SUMF ¶ 9. Plaintiff cannot demonstrate that he experienced an adverse employment action because he was promoted to Clinical Assistant Professor.

**D. Plaintiff Cannot Establish That He Suffered An Adverse Employment Action In 2022 Or That Any Employment Decision Made By TJU Occurred Under Circumstances Giving Rise To An Inference Of Discrimination.**

*(i) Direct Evidence of Discrimination*

Plaintiff has no direct evidence of discrimination. Therefore, to survive summary judgment, Plaintiff must demonstrate that TJU's refusal to grant Plaintiff's demand for promotion to Clinical Professor and backpay eleven days before his resignation occurred in circumstances that would give rise to an inference of discrimination. *See, e.g.*, *Collins*, 247 F. Supp. 3d at 589; *Jarmon v. Trader Joe's Company*, 660 F.Supp. 3d 357 (E.D. Pa. 2023). This requires proving "that similarly situated persons [outside his protected class] were not treated equally." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981); *Lin v. Rohm and Haas Co.*, 293 F. Supp. 2d 505, 517-518 (E.D. Pa. 2003). Two employees are considered similarly situated for purposes of establishing a *prima facie* case if they are "similarly situated in all material respects." *Dill v. Runyon*, C.A. No. 96-3584, 1997 WL 164275, at *4 (E.D. Pa., Apr. 3, 1997) (citing *Perkins v. Bringham & Woman's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996)). This can include showing that the two employees dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them. *Id.* If Plaintiff is unable to make this showing, and "[n]o reasonable jury could find that the comparators the plaintiff[] identified were similarly situated," or that there were other circumstances giving rise to discrimination, summary judgment is appropriate. *Hampshire v. Bard*, 793 Fed. Appx. 75, *80 (3d Cir. 2019) (summary judgment affirmed where plaintiffs produced no evidence of similarly situated employees treated more favorably than them); *Tran v. Delavau LLC*, 615 F. Supp. 2d 381, 388-89 (E.D. Pa. 2009); *Red v. Potter*, 211 F. App'x 82, 84 (3d Cir. 2006).

9

In this instance, since Plaintiff lacks direct evidence of discrimination, he must identify a comparator who received better treatment than he did or provide evidence suggesting he was overlooked for promotion with backpay due to circumstances that give rise to an inference of discrimination. However, he cannot and did not do this. As an initial matter, promoted employees typically serve beyond the minimum eligibility period. Plaintiff cannot and did not identify any other TJU Clinical Assistant Professor who, after announcing their resignation nine months beforehand, and only eleven days from the official date, were promoted to the highest position in the Clinical Track without meeting the criteria for appointment and without the approval of the college's Executive Committee, Dean and Provost. In the days leading up to Plaintiff's resignation on June 30, 2022, he requested promotion to Clinical Professor, skipping the Associate Professor rank, and to receive "backpay" for the difference in the desired position's salary and his current salary. SUMF ¶ ¶ 37-43. Although TJU declined to support Plaintiff's promotion to Clinical Professor due to his inadequate qualifications, they did propose allowing him to submit his application for promotion to Clinical Associate Professor pending resignation. *Id.* Nonetheless, Plaintiff never accepted this offer because it would only provide a new title without any added salary increases, given his resignation on June 30 and TJU's fiscal year beginning on July 1, which coincides with salary increases related to promotions. *Id.* ECF 5 ¶¶ 16-18.

*(ii) Inference of Discrimination*

Plaintiff can likewise point to no other evidence that would give rise to an inference of discrimination. Indeed, the objective evidence suggests the opposite: On June 19, 2018, Plaintiff was promoted to Clinical Assistant Professor. SUMF ¶ 9. On September 15, 2021, Plaintiff submitted his notice of resignation. SUMF ¶ 33. On June 19, 2022, Plaintiff only met the minimum qualifications for time in rank to be considered for promotion by the Executive

Committee to Clinical Associate Professor. Yet, Plaintiff demanded consideration for promotion to Clinical Professor instead and backpay. TJU rejected Plaintiff's demand but offered to grant him consideration for promotion to Clinical Associate Professor. SUMF ¶ ¶ 39-40. Every step in the promotional process during Plaintiff's tenure followed TJU's standard promotional process. *See* Ex. 32-34. Plaintiff has presented no circumstantial evidence that any part of this process was discriminatory. His conclusory allegations and unsupported beliefs are not enough to sustain his complaint. *Lin*, 293 F. Supp. 2d at 518-19. Thus, the Court should grant TJU's motion for summary judgment on Plaintiff's discrimination claims under Title VII and Section 1981.

### E. Plaintiff cannot show that any adverse actions were taken because of his national origin in violation of Section 1981.

Plaintiff's Section 1981 claim asserts he faced discrimination based on his Nigerian heritage. However, neither Plaintiff's FAC nor discovery materials connect his Nigerian national origin to his ancestry or ethnic traits. Due to this lack of evidence, Plaintiff's claim under Section 1981 fails as a matter of law based on his Nigerian heritage.  The Supreme Court has ruled that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *St. Francis Coll. v. Al-Kharzraji*, 481 U.S. 604, 613 (1987). Although Section 1981 addresses more than just racial discrimination, it does not extend to claims based solely on a plaintiff's place of birth. *Kamara v. Horizon House, Inc.,* No. 13-6728, 2015 WL 9260031 at *6 (E.D. Pa. Dec. 18, 2015). *Kamara* highlights the deficiency with respect to Plaintiff's Section 1981 claim. In that case, the district court dismissed the plaintiff's Section 1981 claim because it was premised on the plaintiff's accent and the fact that he was born in Africa. *Id*. at *6. In dismissing the claim, the court noted that a plaintiff cannot pursue a claim of racial discrimination based on his accent, and that the plaintiff's accent resulted from being born outside the United States, not

the plaintiff's ethnic or ancestral origins. *Id.* Indeed, a claim that an individual is subject to discrimination based on their place of birth is "precisely the type of claim that cannot be brought under Section 1981[.]" *Id.* (citing *St. Francis Coll.*, 481 U.S. at 614 (Brennan, J., *concurring*)); *see also Carl v. Western-Southern Life Ins. Co.*, No. 09-3990, 2010 WL 3860432 (E.D. Pa. Sept. 30, 2010) (noting that courts in this District dismiss Section 1981 claims in the absence of allegations of any factors other than place of origin, but have permitted Section 1981 claims to go forward where the plaintiff argued he had been discriminated against because he possessed characteristics common to Jamaican born persons) (citation omitted).

The record here lacks evidence suggesting that Plaintiff was discriminated against because he possessed characteristics common to Nigerians or was otherwise targeted because of his ancestry or ethnicity. Plaintiff's claim hinges on the basic idea that he is from Nigeria, while others who received more favorable treatment come from different locations. This alone fails to substantiate his claim under Section 1981, warranting the grant of summary judgment on that claim. *See generally* Ex. 37.

Plaintiff has failed to produce any evidence supporting his claims, who the alleged comparator(s) is/are, or any facts suggesting the supposed comparator(s) is/are similarly situated. The best Plaintiff offers are his lengthy tenure, his national origin/race, and the fact that he did not get the promotion he wanted. However, that is insufficient as a matter of law to establish the required inference that his disappointment in not being promoted is the result of his national origin or race. In simple terms, the Plaintiff neither has provided, nor can provide, evidence showing that any of his peers received better treatment than he did.

### F.  TJU Had a Legitimate, Non-Discriminatory Reason for its Action.

Even if Plaintiff can establish a *prima facie* case of discrimination based on the denial of a promotion from 2020 through his resignation, TJU can provide a legitimate non-discriminatory

reason for such denial. TJU's position is supported by Dr. Karen Novielli's Declaration and accompanying exhibits. Ex. 38. Namely, Plaintiff was promoted to the highest level that his skill set warranted before his resignation. While the performance of Plaintiff was not deemed by TJU to be poor enough to warrant termination, it also failed to meet the criteria necessary for further advancement. SUMF ¶ ¶ 9-15. Dr. Novielli notes that Plaintiff was on the Clinician Educator Track at TJU. *Id*. For individuals on that track, their teaching ability is critically important in determining whether they should be promoted. *Id*.

Several issues with Plaintiff's performance counseled against promoting him beyond the Clinical Assistant Professor rank, including dependability issues, criticism from students, and criticism from colleagues. *Id*. While Plaintiff generally received positive student feedback, he consistently faced the same criticisms over time with little improvement. Students frequently noted concerns about his teaching style, describing him as someone who often strayed off-topic or rambled, with one stating he "sometimes goes on tangents that are not related to dissection." *Id.* Others remarked that his guidance lacked clarity and that his feedback needed to be more succinct and practical. *Id.* Beyond these classroom issues, Plaintiff also struggled with administrative responsibilities, including the timely and accurate preparation of course materials. *Id.* He often failed to meet deadlines for submitting outlines and submitted disorganized documents missing key components and necessary hyperlinks, which required extensive revisions. *Id.* Although he regularly cited technology issues, he did not complete the required online training in a timely manner—training that was critical for remote instruction during the COVID-19 pandemic. *Id.* Given these continuous issues, TJU declined to promote Plaintiff beyond the role of Clinical Assistant Professor between 2020 and his resignation on June 30, 2022.

### G.  Plaintiff Cannot Establish That TJU's Legitimate Reasons For Its Actions Are Pretext For Discrimination.

Plaintiff cannot satisfy the demanding burden of showing that TJU's stated reasons for not promoting him are a pretext for race and national origin discrimination. In establishing pretext, the issue is not whether an adverse action was "wise, shrewd, prudent, or competent." *Fuentes v. Perskie*, 32 F.3d 759, 765-75 (3d Cir. 1994). Instead, he must come forth with admissible evidence that demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that would permit a rational jury to conclude the legitimate reason offered is "unworthy of credence" and that the real reason for the adverse action is unlawful discrimination. *Id.* at 765. A plaintiff may do so by showing: (1) the employer has previously discriminated against [them]; (2) the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or (3) the employer has treated more favorably similarly situated persons not within the protected class. *Id.*

Plaintiff's burden is a difficult one, requiring more than his speculation that his race and national origin were the reason for his lack of promotion. *Id.* at 764. Rather, Plaintiff must present evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's actions." *Id.* Because the ultimate issue is whether the employer's decision was motivated by discriminatory animus, it is not enough for Plaintiff to show that TJU was wrong in its decision not to promote Plaintiff. *Id.* Instead, Plaintiff must present evidence that TJU's articulated reason for not promoting him was "either a post hoc fabrication or otherwise did not actually motivate the employment action." *Id.* To do this, Plaintiff must point to specific facts that undermine the stated reason for the employment action and suggest a discriminatory motive. *Id.* Without any objective evidence,

Plaintiff's opinion is not enough to carry his burden. *Jones v. Sch. Dist. of Phila.*, 198 F. 3d 403, 413-14 (3d Cir. 1999).

Here, Plaintiff cannot meet his burden or present any objective evidence that would raise doubt about TJU's motivation for not promoting him before he met at least the minimum criteria for advancement. This Court has repeatedly held that speculative allegations based on one's own beliefs are not enough to survive summary judgment. *McLintock v. City of Philadelphia*, 504 F. Supp. 3d 411, 424 (E.D. Pa. 2020) (no pretext where record supported employer's reason, and it was "plaintiff alone" who believed her allegations of race discrimination); *Gilbert*, 564 F. Supp. 2d at 437; *Jones*, 198 F.3d at 413-414. Thus, the Court should grant summary judgment in favor of TJU on that basis alone.

Notwithstanding the fact that the basis for Plaintiff's claims are only his own unsupported guesses about TJU's motivation, Plaintiff's claims still fail at the pretextual stage based on TJU's presented evidence. Specifically, Plaintiff lacked the minimum time required in the prior role to be eligible for promotion to Clinical Professor. The Court has stated that it is "neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer." *Ruff v. Temple Univ.*, 122 F. Supp. 3d 212, 218 (E.D. Pa. 2015) (granting summary judgment as to race claims under Title VII and Section 1981) (quotations omitted). The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason [for the decision] is discrimination. *Moss v. Nat'l Railroad Passengers Corp.*, No. 18-1262, 2019 WL 4697603, at *14, 19-20 (E.D. Pa. Sep. 26, 2019) (quoting *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997) (granting summary judgment on Section 1981 claim where plaintiff had nothing more than speculation that the employer's business decision was motivated by race discrimination, including "no personal

experience with the decision-maker that is suggestive of bias"); *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("what matters is the perception of the decision maker"). TJU has always maintained that Plaintiff was promoted to Assistant Professor but did not meet the minimum qualifications for promotion beyond that position. Based on Plaintiff's failure to present evidence to support his allegations of experiencing an adverse employment action in 2022 or that any employment decision made by TJU occurred under circumstances giving rise to an inference of discrimination, the Court should grant Defendant's motion for summary judgment.

### H.  Plaintiff Cannot Establish That He Was Constructively Discharged.

Plaintiff has failed to produce evidence demonstrating that his work environment or the fact that he was not promoted was so intolerable that he was forced to announce his resignation and continue working for nine months before it became effective. Resignations (including resignation) are presumptively voluntary unless the employee presents evidence showing the resignation was involuntarily procured. *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999); *Gross v. Hatboro-Horsham Sch. Dist.*, No. 23-0633, 2023 WL 4867423 (E.D. Pa. July 31, 2023). Third Circuit courts "employ an objective test to determine whether an employee can recover on a claim of constructive discharge" whereby it must "determine whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502-03 (3d Cir. 2010) (citations omitted); *see also Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992) ("[T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge.") (citation omitted). Notably, "to prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006). Relevant factors the Court considers includes: (1) threats

of discharge; (2) urging or suggesting resignation or retirement; (3) demotion; (4) reduction in pay or benefits; (5) involuntary transfer to less desirable position; (6) altered job responsibilities; or (7) unsatisfactory job evaluations. *Id.* While it is usually a factual question, courts may resolve the issue as a matter of law if "the plaintiff fails to present facts showing that the situation is 'sufficiently extraordinary and egregious to overcome the normal motivation of a competent diligent, and reasonable employee to remain on the job.'" *Spratley v. KidsPeace Corp.*, No. 5:22-cv-02411, 2023 WL 3007933 (E.D. Pa. Apr. 19, 2023) (citations omitted).

At the outset of this argument, it is important to highlight that Plaintiff's constructive discharge claim under Title VII is untimely and fails as a matter of law on this point alone. The statute of limitations for a claim premised on a constructive discharge begins to run when the plaintiff gives notice of his retirement or resignation. *McGlone v. Phila. Gas Works*, No. 15-3262, 2017 WL 659926, at *21 (E.D. Pa. Jan. 19, 2017); *Stremple v. Nicholson*, No. 01-890, 2006 WL 1744316, at *5 (W.D. Pa. June 22, 2006) (citations omitted). Here, the undisputed facts conclusively establish that Plaintiff notified Defendant of his intent to retire no later than September 15, 2021, and thus his constructive discharge claim began to accrue on that date, not the date that his resignation became *effective* on June 30, 2022. SUMF ¶ ¶ 32, 43. Under Title VII, a plaintiff has 300 days from the alleged unlawful employment practice to file a Charge of Discrimination with the EEOC. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). The U.S Supreme Court holds that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Mandel*, 706 F.3d at 165-66. Accordingly, Plaintiff was required to file a charge of discrimination with the EEOC no later than July 12, 2022.

17

However, because he did not do so until April 10, 2023, his constructive discharge claim under Title VII is untimely, and summary judgment is warranted. *See* Ex. 36.

Notwithstanding the above, Plaintiff's claim of constructive discharge under either statute is rooted in TJU's promotional decisions. *See* ECF 5 ¶¶ 30-32, 22-25. This is fatal to his constructive discharge claim because discrimination alone, without aggravating factors, is insufficient to establish a constructive discharge claim. *See EEOC v. Hay Assocs.*, 545 F. Supp. 1064 (E.D. Pa. 1982); *see also Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (repeated denial of promotions and transfer opportunities does not amount to constructive discharge). He has not shown documented proof of aggravating factors during his time at TJU. Plaintiff has not produced *any* evidence to support his claim of constructive discharge from TJU. Moreover, the Plaintiff failed to assert that a hostile work environment existed, which would have provided a lower threshold for establishing a valid claim than what is required for constructive discharge. *Spencer*, 469 F.3d at 316 n.4 (3d Cir. 2006).

However, even if Plaintiff had evidence supporting his constructive discharge claim, his claims still fail. The Court's analysis must focus on whether the conditions at Plaintiff's workplace were so intolerable as of the day Plaintiff announced his resignation that no reasonable and diligent employee would have remained on the job. There is no evidence to support this. Plaintiff gave his notice of resignation on September 15, 2021, and remained on the job for nine months following his resignation announcement. *See Taylor v. Lexington Cty. Sheriff's Dep't*, No. 3:18-cv-2579, 2019 WL 6696062 (D.S.C. Dec. 09, 2019) (eight month advance notice of disability retirement highlighted the plaintiff's choice to remain in her position despite the unpleasant conditions and persuaded the court that her retirement was not a constructive discharge); *Tonello v. City of Grand Junction, Colo.*, No. 19-cv-694, 2020 WL

5760465 (D. Colo. Sept. 28, 2020) (employee's subjective statements about intolerable work conditions were contradicted by the fact that he continued to work for approximately five months after submitting notice of intent to retire); *Shelar v. Ameripride Servs. Inc.*, No. 03-4205-SAC, 2006 WL 1877010, at *9 (D. Kan. July 6, 2006) ("Giving several weeks' notice of the date on which one will be compelled to resign is unprecedented, in this court's experience, for a successful constructive discharge claim.").

In addition to the above, there is no temporal proximity between the denial of a promotion and Plaintiff's decision to announce his intent to retire. The circumstances surrounding Plaintiff's announcement also cut against his claim of constructive discharge. Indeed, Plaintiff's official announcement contained a cordial expression of gratitude for the opportunities TJU provided him. Further, his correspondence to Professor Peiper contained a glowing review of his time at TJU and the treatment he received. SUMF ¶ ¶ 32, 34. Additionally, Plaintiff omits any mention whatsoever of his decision to retire being prompted by the lack of a promotion to "Full Professor" or that he would reconsider his decision to retire if a promotion were offered to him. SUMF ¶ ¶ 32- 36. His resignation was entirely voluntary. If Plaintiff truly faced intolerable conditions that compelled him to retire, he would have done so immediately rather than enduring the alleged mistreatment for nearly another year.

Furthermore, Plaintiff contemplated extending his work duration through a "Phased Retirement" program.[3] SUMF 36. While this program was unavailable to him, Plaintiff's inquiry and openness to further explore the "Phased Retirement" program refutes his claim that he had no alternative but to retire. In conclusion, no "aggravating factors" have been claimed or

---

[3] Significantly, Plaintiff did attach his potential participation in the "Phased Retirement" program to obtaining another promotion.

established to substantiate Plaintiff's constructive discharge claim. Therefore, the Court should dismiss Plaintiff's claims.

**VI.**    **CONCLUSION**

Considering the facts and law stated above, Thomas Jefferson University respectfully requests that the Court grant Defendant's Motion for Summary Judgment.

Respectfully submitted,

*/s/ Melissa Atkins, Esq.*
Melissa Atkins, Esq.
Aimee Schnecker, Esq.
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA  19102
(215) 665-3000

Attorneys for Defendant,
Thomas Jefferson University

Dated: May 5, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this May 5, 2025, I caused the foregoing Defendant, Thomas Jefferson University's, Motion for Summary Judgment and supporting documents to be served via ECF filing upon all counsel of record.


<u>*/s/ Melissa K. Atkins*</u>
Melissa K. Atkins, Esq.