IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OLUTAYO ARIYO,** | : | CIVIL ACTION |
| *Plaintiff, pro se,* | : | |
| | : | NO. 23-2835 |
| **v.** | : | |
| | : | |
| **THOMAS JEFFERSON** | : | |
| **UNIVERSITY MEDICAL** | : | |
| **COLLEGE,** | : | |
| *Defendant.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                    FEBRUARY 26, 2026

## MEMORANDUM OPINION

**INTRODUCTION**

On July 25, 2023, Plaintiff Olutayo Ariyo, ("Plaintiff"), commenced this employment discrimination action against Thomas Jefferson University Medical College, ("Defendant" or "TJU"), his former employer, asserting claims of racial and national origin discrimination under 42 U.S.C. § 1981, ("Section 1981"), and Title VII of the Civil Rights Act, (42 U.S.C. § 2000e *et seq.*), ("Title VII"). Plaintiff, a Black male and immigrant from Nigeria, worked in several post-doctoral and teaching positions at TJU between 1995 and 2022. In his complaint, Plaintiff avers that, during his employment, TJU discriminated against him by keeping him in positions below what his credentials warranted, passing him over for promotions, and assigning him duties above his position without the requisite title change and/or increase in pay and benefits. Plaintiff further avers that in 2022 he was constructively discharged when Defendant refused to provide him backpay after offering to submit him for a Clinical Associate Professor position.

Instantly, before this Court is Defendant's motion for summary judgment, (ECF 38), a statement of undisputed facts, (ECF 38-1), ("Def. SUMF"), and exhibits attached thereto, (ECF

1

38-2), Plaintiff's response in opposition,[1] (ECF 41, 42, 49), and exhibits attached thereto, (ECF 50, 51, 52, 54), and Defendant's reply, (ECF 48). The issues have been fully briefed and are now ripe for resolution.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider the evidence in the light most favorable to the non-movant, here, Plaintiff. *See Qin v. Vertex, Inc.*, 100 F.4th 458, 469 (3d Cir. 2024). The facts and procedural history relevant to the motion for summary judgment are as follows:[2]

    **A.**    **Factual**

Plaintiff commenced his employment with TJU in 1995 as a part-time Post-Doctoral Fellow and remained in that position until 2005. From 2005 until 2013, Plaintiff served as a Research Associate conducting research, performing laboratory work, and assisting with lectures and teaching activities. Plaintiff alleges that TJU kept him in lower-ranking positions earlier in his career, which prevented him from attaining higher-level positions. In June 2013, Plaintiff was promoted to TJU faculty as a Clinical Instructor of Pathology, Anatomy, and Cell Biology.

Five years later, on June 19, 2018, Plaintiff was promoted to the role of Clinical Assistant Professor of Pathology, Anatomy, and Cell Biology. In the role of Clinical Assistant Professor, Plaintiff was tasked with creating experiential courses, collaborating on scholarly research, advising students, and delivering lectures and running dissection laboratories. Generally, Plaintiff received positive student feedback, with some exceptions. Among the exceptions noted, Plaintiff appears to have had difficulty transitioning to and navigating online learning environments.

In 2020, Plaintiff requested and was denied a promotion to the position of Clinical Associate Professor, in part, because he did not meet the year threshold,

---

[1] While Plaintiff's filings, (ECF 41, 42), are fashioned as "motions," this Court, however, construes these filings as responses to Defendant's motion for summary judgment given that they request this Court "not grant" Defendant's motion. (*See* ECF 41 at p. 2).

[2] These facts are taken from the parties' pleadings, briefs, exhibits, and statements of facts. To the extent that any fact is disputed, such dispute will be noted and, if material and supported by record evidence, will be construed in Plaintiff's favor.

(*i.e.* time-in-rank), in his role as a Clinical Assistant Professor to be eligible for the promotion to the next professor rank. Plaintiff would not meet the time-in-rank requirement until June 2022.

The TJU Faculty Handbook details that for a Clinical/Practice Educator to advance from an Assistant Professor to an Associate Professor, they must serve as an Assistant Professor for a minimum of four (4) years. On June 21, 2022, Plaintiff expressed interest in being promoted to the position of full Clinical Professor (the terminal title above Clinical Associate Professor). Defendant, through Dr. Karen Novielli, Senior Vice Provost for Faculty Affairs and Professional Development, and Dr. Stephen Peiper, informed Plaintiff that he did not yet qualify for the position of full Clinical Professor, but that Plaintiff could be considered for a Clinical Associate Professor position, as he had met the time-in-rank requirement for the latter title as of June 2022.

Months earlier, on September 7, 2021, Plaintiff informed Defendant of his intent to retire from TJU at the end of June 2022; information that was confirmed in an official notice on September 15, 2021. On June 30, 2022, Plaintiff ceased his employment with TJU.

### B. Procedural

Plaintiff filed his Original Complaint on July 25, 2023[3] and a First Amended Complaint, on October 12, 2023.[4] In the Amended Complaint (the operative complaint), Plaintiff avers at Count One a claim of racial and national origin discrimination pursuant to 42 U.S.C. § 1981, contending that he was denied promotions and was constructively discharged due to his protected characteristics; and at Count Two, a claim under Title VII of the Civil Rights Act of 1964, *as amended*, (42 U.S.C. § 2000e *et seq.*), for the same allegations – *i.e.*, racial and national origin discrimination in promotion decisions and constructive discharge.[5]

On July 15, 2024, this Court granted, *in part,* Defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure, ("Rule"), 12(b)(6) finding that some of Plaintiff's claims were untimely, and that Plaintiff's surviving claims were his Section 1981 claims as to the failure to promote in 2020 and 2022 and his Title VII failure to promote claim premised on conduct that occurred after June 14, 2022.[6]

---

[3] (ECF 1).

[4] (ECF 5).

[5] (*Id.* at ¶¶ 21-34).

[6] (ECF 17).

Discovery ensued. On August 27, 2024, Plaintiff's counsel filed a motion to withdraw, which was granted on September 11, 2024.[7] Thereafter, Plaintiff has proceeded *pro se*. On April 9, 2025, nearly two months after the close of fact discovery, Plaintiff filed a motion to amend the complaint, which was denied.[8] On April 29, 2025, Plaintiff filed a second motion to amend the complaint, which was also denied.[9]

On May 5, 2025, Defendant filed the instant motion for summary judgment.[10] This Court granted Plaintiff's request for an extension until May 27, 2025 to respond to Defendant's motion.[11] Plaintiff filed a timely response,[12] along with supporting exhibits on four different dates.[13] On June 12, 2025, Defendant filed a reply in support of its summary judgment motion.[14]

**LEGAL STANDARD**

Rule 56(a) governs the practice of motions for summary judgment. As such, Rule 56 provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that 'affect[s] the outcome of the suit under the governing law' and could lead a reasonable jury to return a verdict in favor of the nonmoving

---

[7] (ECF 22, 24).

[8] (ECF 32, 34).

[9] (ECF 35, 57).

[10] (ECF 38).

[11] (*See* ECF 39, 40).

[12] (ECF 41).

[13] Plaintiff's response to Defendant's Statement of Undisputed Material Facts, (ECF 49), and exhibits attached thereto, (ECF 49, 50, Exs. 1-28, ECF 51, ECF 52, and ECF 54), were filed more than two weeks after the deadline set by this Court and after the extension for Plaintiff to file his response to Defendant's summary judgment motion. (*See* ECF 40) (granting extension and ordering Plaintiff to file his response by May 27, 2025). Generally, this tardiness would be grounds to strike those filings, as Defendant requests, (*see* ECF 53). However, in the interest of fairness and judicial economy, these filings are considered.

[14] (ECF 48).

party." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party, here Plaintiff. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Where the non-moving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the non-moving party's case. *Celotex*, 477 U.S. at 322; *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The non-moving party "must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inc. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 58 (1986) (citation omitted).

Generally, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, despite this liberal interpretation, the same standards for summary judgment apply to *pro se* litigants." *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009). That is, "on a motion for summary judgment, a *pro se* plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation and internal quotation marks omitted). "The party opposing summary judgment, whether *pro se* or counseled,

5

must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." *Watson*, 629 F. Supp. at 485; *see also Talbert v. Corr. Dental Assocs.*, No. 18-cv-5112, 2020 WL 6530317, at *1 (E.D. Pa. Nov. 5, 2020) ("[T]he same standards for summary judgment apply to *pro se* litigants. A *pro se* [plaintiff] is not permitted to disregard the Federal Rules of Civil Procedure[] and is not relieved of his obligation to cite competent evidence.").

**DISCUSSION**

      **A.**     **Claims Analysis Framework**

Title VII makes it unlawful for an employer to discharge or "otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Section 1981 requires private and state entities to grant "[a]ll persons" the same rights as are "enjoyed by white citizens." 42 U.S.C. § 1981(a), (c). Title VII and Section 1981 claims "fall under the same analytical framework." *Qing Qin v. Vertex, Inc.*, 100 F.4th 458, 470 (3d Cir. 2024).

Here, Plaintiff brings his claims under a disparate treatment theory – *i.e.*, he claims *he* was treated differently from similarly-situated colleagues based on his race and national origin. (*See generally* ECF 5). Under a disparate treatment theory, a plaintiff of a protected group must show they have been singled out and treated less favorably than those similarly situated owing to a protected characteristic. *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 589 (E.D. Pa. 2017), *aff'd* 708 F. App'x 48 (3d Cir. 2017) (citations omitted). A plaintiff may establish a *prima facie* case under this theory by presenting direct evidence of intentional discrimination by the defendant or, "[i]n the absence of direct evidence, a plaintiff [may show] the existence of circumstantial evidence which creates an inference of discrimination." *Id.* (citations omitted). "In

the absence of direct evidence of disparate treatment, the *McDonnell Douglas* burden-shifting framework applies." *Qing Qin*, 100 F.4th at 472-73. To establish a *prima facie* case of discrimination pursuant to *McDonnell Douglas*, specifically for a claim of failure to hire and/or promote under Title VII and Section 1981, a plaintiff must first:

> show[] (i) that he belongs to a protected category; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open, and the employer continued to seek applicants from persons of complainant's qualifications.

*Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (quoting *McDonnell Douglas*, 411 U.S. at 802) (internal quotation marks omitted). "The goal at this stage is to 'eliminate [ ] the most common nondiscriminatory reasons' for the defendant's actions; by doing so, the *prima facie* case creates an inference that the defendant's actions were discriminatory." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (alteration in original) (quoting *Burdine*, 450 U.S. at 254).

"If a plaintiff makes out a *prima facie* case, then the burden of production shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the action." *Id.* (citation and internal quotation marks omitted). An employer satisfies its burden by introducing evidence that would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. *Anderson*, 621 F.3d at 271 (citing *Fuentes*, 32 F.3d at 764). The employer need not prove that reason "*actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes*, 32 F.3d at 763 (emphasis in original).

Should a defendant meet his burden at step two, the burden shifts again to the plaintiff. "At the third step, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the defendant's explanation is pretextual." *Anderson*, 621 F.3d

at 271 (citation and internal quotation marks omitted). "At this stage, a plaintiff may defeat a motion for summary judgment by either discrediting the defendant's proffered reasons or adducing evidence that discrimination was more likely than not a . . . determinative cause of the adverse . . . action." *Id.* at 764 (alteration in original) (internal quotation marks omitted). As to the amount of evidence required at this step, the United States Court of Appeals for the Third Circuit, ("Third Circuit"), has stated:

> [A] plaintiff may avoid summary judgment by pointing to some evidence from which a factfinder could reasonably conclude that the defendant's proffered reasons were fabricated (pretextual). Next, we consider what quantum of evidence is required. We can reject out of hand the two extreme positions: that the plaintiff can avoid summary judgment simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations on the one hand, or that the plaintiff must adduce evidence directly contradicting the defendant's proffered legitimate explanations on the other. The correct solution lies somewhere in between: to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).

*Fuentes*, 32 F.3d at 764 (citations omitted).

### B. Analysis of the Claims[15]

#### i. The 2020 Promotion Decision

Plaintiff alleges that Defendant discriminated against him when Defendant failed to grant him the promotion he sought in 2020. There is no dispute Plaintiff is a Black male from Nigeria and is, thus, a member of one or more protected class. As no direct evidence of discrimination has been produced, to show a *prima facie* case of discrimination, Plaintiff must, therefore, demonstrate

---

[15] As noted, *see supra* at p. 3, consistent with this Court's July 15, 2024 Order partially granting dismissal, Plaintiff could only pursue his Section 1981 claims as to Defendant's alleged failure to promote him in 2020 and 2022, and his Title VII claim as to Defendant's alleged failure to promote him premised on conduct that occurred after June 14, 2022. (ECF 17). Accordingly, this Court's analysis is limited to Defendants' conduct and promotion decisions related to Plaintiff's 2020 and 2022 promotion requests and June 2022 resignation.

8

he applied for and was qualified for the promotion he sought, denied the promotion, and that the position remained open thereafter. *Fuentes*, 32 F.3d at 763. Defendant argues Plaintiff cannot make out such a *prima facie* case because Plaintiff did not meet the minimum qualifications and skills to advance beyond the rank of Clinical Assistant Professor in 2020, as he had not spent the requisite number of years of service in his current role (*i.e.*, time-in-rank requirement) to qualify for a promotion.[16]

Defendant argues, and Plaintiff appears to agree, that TJU has three ranks of Clinical Professors: Assistant Professor, Associate Professor, and Professor.[17] Relevant here, among other criteria, to progress from one rank to the next, an applicant must work within their role for a certain period of time.[18] According to the TJU Faculty Handbook, a Clinical Assistant Professor must spend at least four (4) years in that role before being considered for promotion to Clinical Associate Professor; and a Clinical Associate Professor must spend at least five (5) years in that role before being considered for promotion to Clinical Professor.[19] However, "[i]n exceptional circumstances, and with the approval of the Provost, faculty may be considered for promotion without having achieved minimal time in rank."[20]

According to the TJU Faculty Handbook and Plaintiff's own description of the promotion process for Clinical Professors at TJU, Plaintiff did not meet the time-in-rank requirement in 2020

---

[16] (ECF 38 at p. 7, 17).

[17] (ECF 38 at p. 7); (*see also* ECF 38-2, Ex. 32 at § 6.3) (presented by Defendants as select sections of TJU's Faculty Handbook) ("TJU Faculty Handbook"); (ECF 41 at 10) (Plaintiff acknowledging each professor rank and time-in-rank requirements).

[18] (TJU Faculty Handbook at §§ 6.3.1, 6.3.4); (*see also* ECF 41 at 10).

[19] (*Id.*); (*see also* ECF 41 at 10) (Plaintiff stating, "it takes 9 years duration to rise from Assistant Professor through Assistant, Associate to becoming FULL Professor" (emphasis in original)).

[20] (*Id.* at § 6.3.1); (*see also* ECF 49 at p. 21).

9

and, thus, was not qualified for the promotion he sought. Plaintiff was promoted to the role of Clinical Assistant Professor on June 19, 2018.[21] Accordingly, Plaintiff would not achieve the minimum time-in-rank for a possible promotion to Clinical Associate Professor until at least June of 2022. Plaintiff has produced no evidence demonstrating he met the time-in-rank requirement when he sought a promotion in 2020. Plaintiff's position appears to be that, because the TJU Faculty Handbook allows for professor promotions in "exceptional circumstances" where the time-in-rank requirement has not been met, he was thus eligible for a promotion in 2020 without having met that requirement.[22] For Defendant's refusal to invoke the "exceptional circumstances" provision to be inferred as discriminatory, however, Plaintiff must, at a minimum, produce competent evidence that similarly situated colleagues not sharing his protected characteristics received this "exceptional" treatment, while he did not. *See, e.g.*, *Collins*, 247 F. Supp. 3d at 589 (holding that under a disparate treatment theory, a plaintiff of a protected group must show they have been singled out and treated less favorably than those similarly situated owing to a protected characteristic). Plaintiff has produced no evidence that any colleague, let alone one not sharing his protected characteristics, received this exceptional treatment and was promoted prior to meeting the time-in-rank requirement.

As such, Plaintiff has failed to demonstrate he was qualified for the promotion he sought in 2020, or that the exception applied to him. This deficiency alone prevents Plaintiff from succeeding at the first step of the *McDonnell Douglas* burden shifting framework, as he cannot establish a *prima facie* case of discrimination related to Defendant's decision not to promote him to a higher professor rank in 2020.

---

[21] (Def. SUMF at ¶ 9, ECF 32-2, Ex. 13); (*see also* ECF 41 at p. 13).

[22] (ECF 49 at p. 21).

In the burden shifting framework, even if Plaintiff had established a *prima facie* case of discrimination, which he has not, Defendant has met its burden by presenting competent evidence supporting its 2020 promotion decision vis-à-vis Plaintiff – *i.e.*, as discussed, Plaintiff had not, in 2020, met the objective, time-in-rank requirement to be eligible for a promotion to the next professor rank.[23]  The Court need not address Plaintiff's pretextual argument since he has not established a *prima facie* case of discrimination nor presented evidence impugning Defendant's legitimate, non-discriminatory decision for its decision.  Accordingly, this Court finds Plaintiff's claim fails at the first step of the *McDonnell Douglas* burden shifting framework, since he failed to show any discriminatory action by TJU and, consequently, there is no genuine issue of material fact for trial regarding Defendant's decision as to Plaintiff's 2020 request for promotion.[24]

      ii.     *The 2022 Promotion Decision*

Plaintiff also alleges discriminatory treatment when Defendant failed to promote him to Clinical Professor in June 2022 after he expressed an interest in a promotion to that terminal rank.[25]

---

[23]    Defendant argues that, during his employ as a Clinical Assistant Professor, Plaintiff had not mastered certain clinical teaching competencies, which would also, according to the TJU Faculty Handbook, preclude advancement to a higher professor rank.  (*See* ECF 38 at 12-13); (*see also* ECF 38-2, Ex. 39) (Declaration of Dr. Karen Novielli, Senior Vice Provost for Faulty Affairs and Professional Development).  Plaintiff disputes Dr. Novielli's conclusions.  Because Defendant has provided another objective, non-discriminatory reason for its promotion decision, *i.e.*, time-in-rank, an issue of fact over Plaintiff's teaching competency does not save Plaintiff's claim.

[24]    Defendant has satisfied its burden under the second step of the *McDonnell Douglas* framework – *i.e.*, it has, with evidentiary support, provided a legitimate, non-discriminatory basis for its employment decision.  Thus, the burden would shift back to Plaintiff to show that Defendant's explanation was not mere pretext.  *See* Anderson, 621 F.3d at 271.  "To show that the offered nondiscriminatory reason is merely pretext, the plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a fact finder could reasonably conclude that each reason was a fabrication; or 2) allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *McIlvaine v. 1SEO Techs., Inc.*, 485 F. Supp. 3d 582, 586 (E.D. Pa. 2020) (citation and internal quotation marks omitted).  Plaintiff has put forward no evidence that would allow a factfinder to cast doubt upon Defendant's proffered objective, non-discriminatory reason for not promoting Plaintiff in 2020.

[25]    (ECF 5 at ¶¶ 16-18, 21-34); (*see also* Def. SUMF at ¶¶ 37, 30).

In its summary judgment motion, Defendant argues that Plaintiff has failed to show a *prima facie* case of discrimination regarding its 2022 promotion decision because Plaintiff has pointed to no evidence that he suffered an adverse employment action, that he met the objective time-in-rank criteria for promotion to Clinical Professor in June 2022, or that he produced any evidence showing that similarly situated individuals lacking Plaintiff's protected characteristics received more favorable treatment.[26]

Factually, on June 21, 2022, Plaintiff and Defendant met to discuss Plaintiff's interest in a promotion to the position of Clinical Professor.[27] At that time, Plaintiff was serving in the role of Clinical Assistant Professor, a position he had held since June 2018. Dr. Novielli explained that, while Plaintiff did not qualify for the role of Clinical Professor, Drs. Novielli and Peiper were willing to put Plaintiff's application forward for promotion to Clinical Associate Professor since he had, as of June 2022, met the minimum time-in-rank requirement for consideration for such a promotion.[28] Plaintiff expressed interest in the offered promotion but only if the title was backdated such that he received the backpay he believed he was owed.[29] Dr. Novielli informed Plaintiff that any post-dating a promotion and attendant backpay was "not appropriate nor acceptable."[30]

As previously noted, the TJU Faculty Handbook requires a professor to serve at least five (5) years in the role of Clinical Associate Professor before promotion to the terminal rank of

---

[26] (ECF 38 at 9-11).

[27] (Def. SUMF ¶ 37).

[28] (*Id.* at ¶¶ 37-41); (*see also* ECF 41 at p. 7).

[29] (*Id.* at ¶¶ 39, 42) (*see also* ECF-2, Ex. 31); (ECF 5 at ¶¶ 17-18, p. 5); (ECF 41 at p.7).

[30] (*Id.* ¶ 42); (*see also* ECF 38-2, Ex. 31).

Clinical Professor.[31]  Because Plaintiff had not served in the role of Clinical Associate Professor as of June 2022, he did not meet the time-in-rank requirement to be promoted to Clinical Professor. Plaintiff appears to argue that his work prior to being appointed to Clinical Assistant Professor in June 2018 should be credited toward his time-in-rank for further promotions.[32]  Even assuming, *arguendo*, that this Court may consider promotion and employment decisions prior to 2020, (*see* ECF 17, holding it cannot), this is not *evidence*.  Plaintiff must do more than plead disparate treatment, he "must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  *See Berckeley Inc. Group, Ltd.*, 455 F.3d at 201.  He has not met his burden.

Thus, Plaintiff's *prima facie* case as to Defendant's 2022 promotion decision is deficient for the same reasons as his *prima facie* case regarding Defendant's 2020 decision; that is, Plaintiff did not qualify for the promotion he sought because he did not meet the time-in-rank requirement for promotion to full Clinical Professor at that time.  Defendant has proffered a legitimate, non-discriminatory reason for its decision – *i.e.*, Plaintiff simply did not meet the object time-in-rank requirement.  Plaintiff has put forth *no* evidence suggesting this criterion was mere pretext to mask any discriminatory intent.  Indeed, Defendant offered to put Plaintiff up for a promotion to Clinical Associate Professor in June 2022, the time at which he met the time-in-rank requirement for such a promotion.

In sum, Plaintiff has failed at Step 1 to make out a *prima facie* case of discrimination as to Defendant's 2020 and 2022 promotion decisions because he has not demonstrated or pointed to

---

[31]   (TJU Faculty Handbook § 6.3.4); (*see also* ECF 41 at 10).

[32]   (*See, e.g.*, ECF 41 at p.17) (Plaintiff arguing that between 2005 and 2013, thus before being promoted to Clinical Assistant Professor, he "performed the same job alongside colleagues, Dr. Hector Lopez and Dr. Guiayan Zhang," each of whom fetched a higher salary because of their titles).

13

any evidence to show that he was qualified for the promotions he sought. Though not required, Defendant has put forward competent evidence of legitimate, non-discriminatory reasons for those decisions and, Plaintiff has not rebutted those reasons with evidence to show the reasons proffered were pretextual. In short, Plaintiff has not shown any disparate treatment or discrimination regarding Defendant's decisions not to promote him to the positions he sought in 2020 and 2022. Accordingly, his claims as to both employment decisions are dismissed.

### iii. Constructive Discharge

Though not brought as a distinct count, Plaintiff appears to allege that the "campaign of discrimination and failure to promote Plaintiff" resulted in a constructive discharge from employment with TJU.[33] However, the facts belie this argument. In September 2021, Plaintiff put Defendant on notice of his intent to retire nine months later, at the end of June 2022.[34] On June 30, 2022, Plaintiff ceased his employment with TJU.[35] Defendant argues that Plaintiff's constructive discharge claim under Title VII is barred by the statute of limitations because the limitations period begins to run, not when a resignation becomes effective, but rather when notice of resignation is tendered. Defendant also argues, *inter alia*, that, even if the claim under Title VII were not time-barred, Plaintiff has failed to produce competent (or *any*) evidence to support the claim that his conditions of employment were so intolerable that he was compelled to leave his employment with TJU.[36]

---

[33] (ECF 5 at ¶ 20).

[34] (ECF 41 at p. 14); (Def. SUMF at ¶¶ 32-3); (ECF 38-2, Ex. 4).

[35] (Def. SUMF at ¶ 43).

[36] (ECF 38 at pp. 16-19).

"Employee resignations and retirements are presumed to be voluntary." *De Piero v. Pennsylvania State Univ.*, 711 F. Supp. 3d 410, 419–20 (E.D. Pa. 2024) (quoting *Leheny v. City of Pittsburgh*, 183 F. 3d 220, 227 (3d Cir. 1999)) (internal quotation marks omitted). Thus, "the onus is on" Plaintiff "to produce 'evidence to establish that the resignation … was involuntarily procured.'" *Judge v. Shikellamy Sch. Dist.*, 905 F.3d 122, 125 (3d Cir. 2018) (quoting *Leheny*, 183 F.3d at 228). "[A] court must determine whether a reasonable jury could find that the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001) (citation and internal quotation marks omitted). A non-exhaustive example of employer conduct that could be used to infer constructive discharge includes: "[t]hreats of discharge, suggestions to resign or retire, demotions, reductions in pay or benefits, involuntary transfers to less desirable positions, alterations in responsibilities, and unsatisfactory job evaluations." *De Piero*, 711 F. Supp. 3d at 419 (citing *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993), *cert. denied*, 510 U.S. 964 (1993)) (internal quotation marks omitted). "[A] reasonable employee will usually explore such alternative avenues thoroughly before coming to the conclusion that resignation is the only option." *Clowes*, 991 F.2d at 1161 (citations omitted).

Defendant's argument that the statute of limitations bars Plaintiff's Title VII constructive discharge is incorrect. Defendant it inaccurately identifies when the claim accrues. As the Supreme Court has explained:

> Under the standard rule for limitations periods, the limitations period should begin to run for a constructive-discharge claim only after a plaintiff resigns. At that point—and not before—he can file a suit for constructive discharge. So only at that point—and not before—does he have a 'complete and present' cause of action. And only after he has a complete and present cause of action does a limitations period ordinarily begin to run.

15

*Green v. Brennan*, 578 U.S. 547, 555 (2016). Here, Plaintiff could not have brought suit for constructive discharge when he announced his intent to resign in September 2021, as Defendant suggests, because he had not yet been "discharged." *See id.* at 556 ("With claims of either constructive discharge or actual discharge, the standard rule thus yields the same result: a limitations period should not begin to run until after the discharge itself."). Instead, the constructive discharge claims starts to accrue in June 2022, when he resigned. Therefore, this Court finds that Plaintiff's claim of constructive discharged is not time-barred.

As to Defendant's second argument – *i.e.*, that Plaintiff has failed to point to any evidence to support his constructive discharge theory – this Court agrees. Rather than demonstrating evidence of a hostile or intolerable work environment, the evidence of record shows Plaintiff praising TJU and his colleagues. On August 31, 2021, Plaintiff emailed Dr. Peiper an "informal and personal letter" informing Dr. Peiper that "[he] hope[d] to retire in June 2022." In that letter, Plaintiff wrote: "Grateful for the support, encouragement and the provision and support for a vibrant enabling workplace that is friendly and highly supportive of scholarship."[37] Likewise, in Plaintiff's "official notification" of his intent to retire as of June 30, 2022, Plaintiff wrote to Dr. Peiper "thank[ing] the Department and the University for all of the opportunities made available to [him]."[38] And that Plaintiff chose to spend another academic year with TJU after his announced retirement contradicts his post-hoc statements in pleadings of an intolerable work environment. *See Tonello v. City of Grand Junction, Colo.*, 2020 WL 5760465, at *8 (D. Colo. Sept. 28, 2020) (explaining that "conditions of employment must be objectively intolerable; a plaintiff's

---

[37]  (ECF 38-2, Ex. 10).

[38]  (ECF 38-2, Ex. 4)..

16

'subjective views of the situation are irrelevant'" (quoting *Yearous v. Niobrara Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997))).

Plaintiff, for his part, has not produced any evidence that would allow a rational trier of fact to conclude that he was constructively discharged after a "campaign of discrimination and failure to promote."[39] Indeed, from 2013 to 2022, Plaintiff was promoted to Clinical Instructor in 2013, to Clinical Assistant Professor in 2018, and then offered the opportunity to apply for a promotion to Clinical Associate Professor in 2022. Plaintiff has failed to rebut Defendant's evidence. Accordingly, no genuine issue of material fact exists on Plaintiff's claim of constructive discharge.

**CONCLUSION**

Based on the reasons set forth, this Court finds that Plaintiff has not made out a *prima facie* case pursuant to Title VII or Section 1981 for discrimination and failure to promote due to Plaintiff's protected characteristics of race and national origin or to support his claim of constructive discharge. Nor has Plaintiff effectively rebutted Defendant's proffered legitimate, non-discriminatory reasons for its decisions regarding Plaintiff's requests for promotions. Accordingly, this Court finds that no genuine issue of material fact exists for trial and summary judgment in favor of Defendants is warranted. An order consistent with this memorandum opinion will follow.

*NITZA I. QUIÑONES ALEJANDRO*, J.

---

[39] (*See* ECF 5 at ¶ 20).